**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRIAN K.,<br><br>*Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>*Defendant*. | Case No. 25-cv-02110<br><br>Hon. Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Brian K.'s[1] applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This case was assigned to the Hon. Beth W. Jantz in accordance with Local Rule 40.3(c). For the reasons stated below, Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 13) is GRANTED, and Defendant's Memorandum in Support of Motion for Summary Judgment (Dkt. 14) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**BACKGROUND**

Plaintiff Brian K. filed applications for SSI and DIB, alleging disability beginning June 1, 2017. (R. 211, 219.) The applications were denied initially and upon reconsideration (*id.* at 142–143, 151), and Administrative Law Judge ("ALJ") William Spalo issued an unfavorable decision on October 5, 2020 (*id.* at 1982–1997). The Appeals Council denied Plaintiff's request for review

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name.

on March 26, 2021, and Plaintiff sought judicial review. (*Id.* at 1–3.) On June 10, 2022, this Court granted the parties' agreed motion for reversal and remanded the matter for further administrative proceedings. (*Id.* at 1952–53.) The Appeals Council subsequently vacated the Commissioner's decision and remanded the case to an ALJ. (*Id.* at 1964, 1969–1975.)

Following a hearing on April 24, 2023 (R. 1905–1947), ALJ George Gaffaney issued a partially favorable decision on September 1, 2023, finding Plaintiff disabled beginning January 2, 2022. (*Id.* at 2003–2023.) On March 12, 2024, the Appeals Council vacated the portion of that decision finding Plaintiff not disabled before January 2, 2022, and remanded the case for further proceedings concerning the period from June 1, 2017, through January 1, 2022. (*Id.* at 2034–2037.) On September 26, 2024, ALJ Edward Studzinski conducted a telephonic hearing at which Plaintiff, counsel, and a vocational expert appeared. (*Id.* at 1885–1904.) The ALJ issued an unfavorable decision on November 5, 2024, finding Plaintiff not disabled during the remaining period at issue. (*Id.* at 1851–1874.)

In his written decision, the ALJ applied the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 1, 2017, through January 1, 2022. (R. 1857.) At step two, the ALJ found the following severe impairments: depression, bipolar disorder, degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the shoulders, and degenerative joint disease of the left ankle and foot. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.* at 1857–1859.)

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional limitations. (R. 1859.) Among other restrictions, the ALJ found that Plaintiff could stand or walk for six hours and sit for six hours in an eight-hour workday, but

needed to alternate among sitting, standing, and walking for no more than five minutes each hour without being off task. (*Id.*) The ALJ further limited Plaintiff to frequent overhead reaching with the left upper extremity; occasional climbing of ramps and stairs and crawling; no climbing of ladders, ropes, or scaffolds; and work in nonhazardous environments. (*Id.*) Mentally, the ALJ limited Plaintiff to understanding, remembering, and carrying out simple instructions; making simple work-related decisions; occasional interaction with supervisors and coworkers; no interaction with the public; no work requiring a specific production rate, although Plaintiff could tolerate end-of-day quotas; and occasional changes in a routine work setting. (*Id.*) At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 1873.) At step five, relying on the vocational expert's testimony, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, including marker, mail sorter, and label coder. (*Id.* at 1873–74.)

The ALJ therefore concluded that Plaintiff was not disabled from June 1, 2017, through January 1, 2022. (R. 1874.) Plaintiff challenges the Commissioner's final decision denying his applications for SSI and DIB for that period, and the matter is before this Court for judicial review. (*See generally* Dkt. 1.)

## DISCUSSION

### I. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the

Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## II. The ALJ Did Not Adequately Evaluate Dr. Stone's Opinion

Plaintiff raises three principal challenges to the ALJ's decision. He argues that the ALJ erred by: (1) inadequately evaluating the opinions of Drs. Michael Stone and Margaret Grano; (2) failing to support the RFC assessment; and (3) improperly evaluating his subjective symptoms. As discussed below, because the ALJ's evaluation of Dr. Stone's opinion alone warrants remand, the Court will not address, and thus makes no ruling on, Plaintiff's remaining arguments.

For claims filed on or after March 27, 2017, the ALJ does not defer to or give any specific evidentiary weight to any medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ must articulate how persuasive he finds all such opinions and findings in the record. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). In evaluating persuasiveness, the most important factors are supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025). Supportability concerns the extent to which objective medical evidence and explanations support the opinion, while consistency concerns the extent to which the opinion aligns with other medical evidence in the record. *See Cain*, 148 F.4th at 497. Although the ALJ's articulation burden is minimal, the decision still must provide enough explanation to permit meaningful judicial review. *See Warnell*, 97 F.4th at 1054 (quoting *Moore v. Colvin*, 743 F.3d

1118, 1121 (7th Cir. 2014)). The ALJ also must confront evidence that does not support his conclusion and explain why it was rejected. *See Cain*, 148 F.4th at 497 (quoting *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018)).

Dr. Stone, the Commissioner's consultative examining psychologist (R. 1864), examined Plaintiff on January 29, 2019, and documented both normal and abnormal findings. (*Id.* at 869.) Plaintiff's behavior was appropriate, his orientation was adequate, his appearance was appropriate, and his thought process "did not evidence loose associations, flight of ideas, tangentiality or circumstantiality." (*Id.* at 869–70.) At the same time, Dr. Stone noted a flat affect, depressed and anxious mood, poor memory, difficulty with more complicated calculations, impaired general knowledge and judgment, and difficulty interpreting proverbs. (*Id.*) Based on those findings, Dr. Stone opined that Plaintiff had poor abilities to relate to coworkers, supervisors, and the public; understand, remember, and follow simple directions; maintain attention for simple, repetitive tasks and sustain concentration, persistence, and pace; and withstand ordinary workplace stress and pressures. (*Id.* at 870–71.)

The ALJ found Dr. Stone's opinion to be of limited persuasive value, reasoning that Plaintiff showed psychological improvement when compliant with medication and treatment. (R. 1869.) In support of that conclusion, the ALJ recounted several hospitalization discharge summaries and treatment notes documenting improvement, fair functioning, or reduced symptoms when Plaintiff resumed treatment. (*Id.*) But that explanation did not adequately address the supportability of Dr. Stone's opinion, specifically whether Dr. Stone's own examination findings supported the limitations he assessed. Dr. Stone did not merely repeat Plaintiff's allegations or offer unexplained conclusions; he personally examined Plaintiff and documented abnormalities bearing directly on memory, attention, judgment, abstract thinking, social functioning, and adaptation. (*Id.* at 869–

70); *see, e.g.*, *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("[R]ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step."). Although the ALJ summarized some of those findings earlier in the decision (R. 1864), he did not explain why they failed to support Dr. Stone's assessed limitations. For example, the decision does not explain why Plaintiff's poor memory and difficulty with more complicated calculations did not support limitations in understanding, remembering, and following even simple directions, or why his flat affect, depressed and anxious mood, impaired judgment, and difficulty with abstract thinking did not support Dr. Stone's assessed limitations in social interaction, adaptation, and tolerance for ordinary workplace stress. (*Id.* at 1869.) Merely summarizing examination findings does not explain whether, or to what extent, those findings support the medical opinion. *See Kia S. v. O'Malley*, No. 22-CV-06037, 2024 WL 3455026, at *3 (N.D. Ill. July 18, 2024) ("While summaries are appropriate to include in an ALJ's decision, a summary without analysis does not provide the Court with any indication of what evidence or reports the ALJ relied on to make her RFC determination or why."); *Rehab S. v. Kijakazi*, No. 19 CV 93, 2021 WL 3290857, at *4 (N.D. Ill. Aug. 2, 2021) ("An ALJ must do more than just summarize medical findings and then, a few paragraphs later, entirely discount the only treating opinion of record without analogy or explanation.").

The ALJ's reliance on improvement with medication and treatment addressed, at most, the consistency of Dr. Stone's opinion with selected portions of the longitudinal record. *Cf. Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). Although the record included evidence that Plaintiff improved with treatment at times, it also reflected serious mental-health symptoms during the

relevant period, including psychiatric hospitalizations, suicidal ideation, homicidal ideation, hopelessness, poor insight and judgment, agitation, depression, and hearing voices. (R. 336, 542, 664, 787, 805, 1130, 1169–70, 1865, 1869.) This mixed record may ultimately permit the ALJ to find Dr. Stone's opinion less persuasive, but the ALJ must confront the evidence supporting the opinion and explain why it does not warrant greater persuasive value. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected."); *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021). Here, the ALJ moved from evidence of improvement to the conclusion that Dr. Stone's opinion had limited persuasive value without explaining how that improvement undermined the particular workplace limitations Dr. Stone assessed. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing light work.").

The Commissioner emphasizes that the ALJ acknowledged Dr. Stone's abnormal findings and imposed a restrictive mental RFC. (Dkt. 14 at 3.) Those points, however, do not establish that the ALJ adequately *evaluated* Dr. Stone's opinion. The RFC limited Plaintiff to simple work, limited social contact, no public interaction, no specific production-rate work, end-of-day quotas, and occasional workplace changes. (R. 1859.) But those restrictions do not explain *why* the ALJ rejected Dr. Stone's materially greater limitations, including poor ability to follow simple directions, sustain attention and pace, interact appropriately with others, and tolerate ordinary work stress. (*Id.* at 869–71, 1859); *see Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) ("We have also made clear that in most cases employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems

of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area." (internal quotation marks omitted)). The question is not whether the ALJ included some mental restrictions, but whether he adequately explained his treatment of an examining psychologist's opinion that could support more restrictive limitations. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Moore*, 743 F.3d at 1127.

Nor is that error harmless. Dr. Stone's opinion addressed functional areas directly implicated by the RFC and the ALJ's finding at step five. A proper evaluation of that opinion could alter the mental limitations included in the RFC and, in turn, the jobs available to Plaintiff. The Court therefore cannot conclude with confidence that the same result would follow on remand. *Cf. Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record . . . then remanding is a waste of time.").

Accordingly, remand is required for the ALJ to reevaluate Dr. Stone's opinion and explain how its supportability and consistency affect its persuasiveness. To be clear, the Court makes no determination as to the persuasiveness of Dr. Stone's opinion. The Court holds only that the ALJ did not adequately explain why Dr. Stone's examination findings and the other evidence supporting his assessed limitations did not warrant greater persuasive value. In light of the Court's decision to remand on that issue, the Court need not address Plaintiff's remaining arguments. The Commissioner should not, however, construe the Court's silence as an indication that the ALJ's initial adjudication was appropriate as to the outstanding issues.

## CONCLUSION

For the reasons stated above, Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 13) is GRANTED, and Defendant's Memorandum in Support of Motion for Summary Judgment (Dkt. 14) is DENIED. The Commissioner's decision is

reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.

DATED: September 30, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge